HARRY F. SCHNELL, PROSECUTOR, v. THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF OCEAN, THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF OCEAN, THE BUILDING INSPECTOR OF THE TOWNSHIP OF OCEAN, ANTHONY MILLER AND ELSIE P. MILLER, DEFENDANTS.

Submitted October 5, 1937—Decided April 22, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Gilbert H. Van Note.*

For the defendants the Township Committee of the Township of Ocean, the Board of Adjustment of the Township of Ocean and the Building Inspector of the Township of Ocean, *Henry H. Patterson (Kays R. Morgan,* of counsel).

For the defendants Anthony Miller and Elsie P. Miller, *Polter & Fisher.*

The opinion of the court was delivered by

HEHER, J. Prosecutor assails "the action" of the township committee of the Township of Ocean, in the County of Monmouth, and the township's board of adjustment and building inspector, "in recommending, granting and issuing" to defendants Miller "a permit for the erection of a gasoline station, automobile filling station or public garage" on the northwest corner of Roosevelt Avenue and Monmouth Road, within the township.

The building inspector, deeming that he was without authority, took no action on the original application directed to him. The matter was then presented to the board of adjustment, created by the municipal zoning ordinance, who, after public hearing had on notice to the parties in interest, "recommended" the issuance of the permit to the township committee. That body, by resolution adopted at a regular meeting held on March 5th, 1937, "approved" the "application," and directed the building inspector to issue a permit in accordance therewith.

Pursuant to the power conferred by chapter 274 of the laws of 1928 (*Pamph. L.* 1928, *p.* 696; *Rev. Stat.* 1937, 40:55-30 *et seq.*), the municipal governing body, on June 6th, 1930, adopted the zoning ordinance; and it was therein provided [section 5, subdivisions (1) and (m)] that, since "gasoline or oil stations, automobile filling and cleaning stations and public garages," while necessary, "may be inimical to the public safety and general welfare if located without due consideration of conditions and surroundings," no permit therefor shall be issued "except upon application first made to the board of adjustment," who is directed to hear the same "in the same manner and under the same procedure as the board of adjustment is empowered by law and ordinance to hear cases and make exceptions to the provisions of a zoning ordinance," and empowered to "recommend in writing to the township committee that a permit" for such use be granted, if, in its judgment, it "will not be detrimental to the health, safety and general welfare of the community, and is reasonably necessary for the convenience of the community;" pro-

vided that no permit for "construction or use as a gasoline or oil station, automobile filling or cleaning station or public garage shall be given in a residential zone or district." The premises in question are located in a district zoned for business.

The primary question for decision is whether the provisions of subdivisions (1) and (m) of section 5 of the ordinance, in so far as they specially classify automobile service stations and public garages, constitute a valid exercise of municipal power.

Of necessity, the factor of safety in several of its aspects, as well as the public convenience, enters largely into the determination of the location and the physical characteristics of these service stations. Reasonable regulation as respects such land uses, guided by these considerations, is therefore embraced within the police power. See *Hirschorn* v. *Castles,* 113 *N. J. L.* 277; *Bashlow* v. *City Council of Clifton,* 118 *Id.* 390; *Meslar* v. *Township Committee of Denville,* 14 *N. J. Mis. R.* 497. As pointed out in *Phillips Oil Co.* v. *Municipal Council of Clifton,* 120 *N. J. L.* 13, section 5 of the Zoning act, *supra,* directs that zoning regulations shall be designed, *inter alia,* to obviate unnecessary traffic hazards; to "secure safety from fire, panic and other dangers;" and to subserve the "general welfare."

It is not contended that there has been no sufficient delegation of this regulatory power to the township. The insistence is that these particular provisions "do not conform to the Zoning Act," in that the statutory delegation of power to the board of adjustment (section 9 of the Zoning Act, *supra*) does not, in terms, include the authority so exercised, and, on the principle that section 9 is to be strictly construed, they are *ultra vires* the municipality.

We do not yield the argument so made. Fairly construed, subdivision (4) of section 9 of the Zoning Act, *supra,* embraces the authority in question. We do not read it as confined to "appeals" in the strict technical sense. Certainly, the legislature did not contemplate the futile proceeding of an application to the building inspector or like authority for

a permit to do a thing prohibited by the zoning ordinance, and a denial, as prerequisites to the exercise by the board of adjustment of the jurisdiction so bestowed. If this subdivison be construed as limiting the jurisdiction of the board of adjustment to appeals in cases where the administrative officer has a duty to perform, it will have little or no practical significance. And, in the instant case, an application was in fact made to the building inspector; and his nonaction under the circumstances may reasonably be considered as the equivalent of a denial.

Moreover, granting the power of the municipality, in the exercise of the zoning authority, to make such use the subject of special regulation—this is not questioned here—we perceive no objection to a procedural scheme that calls for the advisory opinion of the board of adjustment, based upon its experienced judgment, as a prerequisite to action by the governing body.

But it is the prosecutor's further insistence that the board of adjustment, in exercising this function, was bound by all the procedural requirements of the Zoning Act, and that the instant proceeding is fatally deficient in the following particulars: (1) There was a failure of compliance with the statutory provision for notice of the hearing before the board, in that it was given to some of the affected resident landowners by registered mail, rather than by personal service or "by leaving a copy thereof at the usual place of abode" of such party; (2) a "proper majority" of the board of adjustment "did not approve and recommend the application to the township committee," the point being that only two of the three members present at the hearing recommended that the application be granted, and that two members of the board so voting did not participate in the hearing; (3) that the board "swore no witnesses and took no testimony," and made no "findings of fact on which to base its recommendation;" and (4) that the board, in the conduct of the hearing and in the rendition of its judgment, acted in an arbitrary fashion.

As stated, the ordinance enjoins the board to "hear the application in the same manner and under the same procedure as" it "is empowered by law and ordinance to hear cases and make exceptions to the provisions of a zoning ordinance." And it is the established rule that such an inquiry, involving as it does the exercise of the police power, is judicial in nature; and the action of the board, in making or recommending a special exception, must therefore be made to rest upon legal evidence tending to establish facts justifying the action. *Somers* v. *Bradley Beach*, 115 *N. J. L.* 135; *Hendey* v. *Ackerman*, 103 *Id.* 305; *Fonda* v. *O'Donohue*, 109 *Id.* 584; *Linden Methodist Episcopal Church* v. *Linden*, 113 *Id.* 188; *St. Mary's, &c., Church* v. *Board of Adjustment of New Brunswick*, 14 *N. J. Mis. R.* 288; *Marvin* v. *Board of Adjustment of Westfield*, 5 *Id.* 668. It was encumbent upon the board, in the performance of the duty delegated by the ordinance, to determine whether the proposed use would, in the circumstances, be "inimical to the public safety and general welfare." That was the fundamental fact to be determined; and the ordinance charged the board with the duty of making the determination upon legal evidence in accordance with the requirement of section 9 of the Zoning Act.

The ordinance was adopted some three years after the adjudication of the case of *Hendey* v. *Ackerman, supra;* and it is an entirely reasonable presumption that the governing body, by the provision referred to, designed that the board's function should be judicial rather than administrative, pursuant to the command of the zoning statute as construed in that case.

It is stipulated that the witnesses were not sworn; and the return discloses that the action under review was preceded by a discussion of "the testimony of property owners appearing at the public hearing" held in the matter.

The case of *Amon* v. *Rahway*, 117 *N. J. L.* 589, is distinguishable from the line of cases last cited. There the action was not based upon the testimony of unsworn witnesses. The board "took the practical and sensible method of examining the physical conditions on the ground;" and it was observed

that "the statute does not require that the sworn testimony of witnesses be taken." And it is to be borne in mind that the ordinance here lays down a specific standard for the guidance of the board of adjustment.

Thus it is that the proceedings before the board of adjustment have no validity. Nor can the approving action of the governing body be made effective as an original exercise of an inherent power. The ordinance [section 5 (m)] explicitly provides that no permit for such use "shall be issued except upon application first made to the board of adjustment and upon hearing as herein provided." See *Hirschorn* v. *Castles, supra.*

It is therefore unnecessary to pass upon the other questions raised.

The proceedings are accordingly vacated, with costs.